**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS DOYLE AND PATRICIA** | : | **CLASS ACTION** |
| **DOYLE, HUSBAND AND WIFE,** | : | |
| **INDIVIDUALLY AND ON BEHALF** | : | **02-CV-2939 LP** |
| **OF ALL OTHERS SIMILARLY** | : | |
| **SITUATED** | : | |
| **930 Caledonia Street** | : | |
| **Philadelphia, Pa 19128** | : | **73 P.S. § 201-1, Et Seq.** |
| | : | |
| **v.** | : | **73 P.S. § 2270.4, Et Seq.** |
| | : | |
| **MELLON BANK, N.A.** | : | **Removed From Philadelphia** |
| **Two Mellon Bank Center** | : | **Court of Common Pleas** |
| **Pittsburgh, PA 15219** | : | **April Term 2002** |
| | : | **Number 2715** |
| **and** | : | |
| | : | |
| **DAVIS & REILLY, P.C., and** | : | |
| **DAVIS DAVIS ATTORNEYS, P.C., and** | : | |
| **REED J. DAVIS** | : | |
| **650 Washington Road, Suite 510** | : | |
| **Pittsburgh, PA 15228** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JOHN DOES 1 THROUGH 50** | : | |

**FIRST AMENDED CLASS ACTION COMPLAINT IN CIVIL ACTION**

**INTRODUCTORY STATEMENT**

      1.    The United States Bankruptcy Code (the "Code"), Title 11, most

specifically § 506(b), requires that any secured creditor seeking bankruptcy-related[1]

attorney's fees and costs from or attributed to the debtor in bankruptcy must make

application to and secure Bankruptcy Court approval of such fees and costs.[2]

---

[1] "Bankruptcy-Related" means fees and costs incurred during and as a result of and
related to a debtor(s)' bankruptcy proceeding(s).

[2] 11 U.S.C. § 506(b) is equally as applicable to Chapters 7, 11, 12 and 13.

2.    Furthermore, the Code provides that when the Bankruptcy Court confirms a plan under Chapters 11, 12, or 13, confirmation acts as <u>res judicata</u> as to any issues which could have been raised pursuant to the allowance of proofs of claim, and any other issues which could have been raised pursuant to confirmation; therefore, any pre-petition attorney's fees and costs set forth as a part of a claim are thus disallowed upon confirmation, and cannot be the subject of later attempts to collect or collection.  <u>See</u> 11 U.S.C. § 524.

3.    This case deals specifically with two types of charges by a secured creditor for attorney's fees and costs, both of which are disallowed by the Code, and the post-bankruptcy attempts to collect and the collection thereof which are asserted to be illegal and violative of the Code, 73 P.S. § 201-1, <u>et seq.</u>, 73 P.S. § 2270.4, <u>et seq.</u>, 41 P.S. § 401, <u>inter alia</u>, and in breach of contract and other duties.  Debtors affected by the attempts to collect and the collection of these two types of illegal charges fall into two categories, or sub-classes[3]:

Sub-Class I.    Debtors who have been discharged from bankruptcy and who have been or are charged for pre-petition bankruptcy attorney's fees and costs incurred by or on behalf of a secured creditor that were not the subject of an allowed proof of claim or otherwise approved by the Bankruptcy Court;

Sub-Class II:   Debtors who are no longer in bankruptcy and who have been or are charged bankruptcy-related attorney's fees and costs incurred by or on behalf

---

[3] Membership in the Class is determined in significant part by the applicable statute of limitations; e.g., the Pennsylvania <u>Unfair Trade Practices and Consumer Protection Law</u> sets forth a six (6) years statute of limitations, while the United States District Court for the Western District of Pennsylvania, in <u>Paslowski v. Standard Mortgage Corp.</u>, 1999 U.S. Dist. LEXIS 15787, specifies a twenty (20) years statute of limitations.

of a secured creditor which bankruptcy-related attorney's fees and costs were not or have not been the subject of application to and approved by the Bankruptcy Court.

4.      These illegal charges were generally accrued <u>sub silentio</u>, and incurred without compliance with the contractual requirement of "reasonableness", and/or that such charges shall only occur "upon notice to Borrower".  <u>See</u> generic paragraph 7 of Exhibit "A", a generic mortgage document.

5.      In very few situations covered by this Class Action complaint did defendants file a comprehensive proof of claim or otherwise make application to the Bankruptcy Court for approval of these fees and costs, and, if proofs of claim and/or applications were made, they were not allowed as filed, denied or otherwise not approved by the Court.

6.      The simple main thread – the focal point – of this case, touching every member of the putative Class, is the accrual of these charges, mostly <u>sub silentio</u>, and the post-bankruptcy attempts by defendant to collect pre-petition attorney's fees and costs that were not included in allowed proofs of claim, and/or bankruptcy-related attorney's fees and costs, all of which have been or were charged to the debtor's account by the secured creditor, yet were not the subject of an allowed proof of claim, and/or application to and/or approval by the Court.  In other words, defendants are engaged in the collection or attempted collection of attorney's fees and costs not authorized by agreement and/or not permitted by law.

7.      By the defendants' accrual of these charges and the attempt to collect these charges after bankruptcy, the defendant is precluding and excluding the Bankruptcy Court, the trustee, other creditors, the debtor, and other persons in interest from notice

and an opportunity to question and/or challenge these fees and costs, and the "reasonableness" thereof, as required by the Code and state law.

8.    These attempts at collection, and the actual collection thereof, violate statute, contract, the duty of "good faith and fair dealing", other common law duties, and constitute misrepresentation.

9.    Defendants' attempts to collect and the collection of these illegal charges after the debtor(s) is/are out of bankruptcy constitute unfair and deceptive trade practices and illegal debt collection practices.

10.    The common thread throughout Sub-Class I and Sub-Class II is that every member of this putative class has been a debtor in a bankruptcy proceeding in which the defendant, MELLON BANK, N.A. ("Mellon"), a secured creditor[4], has accrued pre-petition attorney's fees and costs and/or bankruptcy-related attorney's fees and costs, often sub silentio, and only noticed the debtor(s) and sought collection thereof after the debtor(s) were dismissed, withdrawn or discharged from bankruptcy, and were therefore no longer purportedly under the aegis of the Bankruptcy Court.  The attempt to or collection of these attorney's fees and costs are the subject of this Class Action complaint.

**THE PARTIES**

11.    Plaintiffs, THOMAS W. DOYLE ("Thomas Doyle") and PATRICIA DOYLE ("Patricia Doyle") are husband and wife, residents and citizens of the Commonwealth of Pennsylvania, with their residence located at the address set forth in the caption hereto, in Philadelphia County.  Plaintiffs are mortgagors of a mortgage that

---

[4] The collateral security is a residence under a residential mortgage obligation.

had been serviced by defendant, Mellon.  Plaintiffs bring this action on behalf of themselves and on behalf of a class of persons whose mortgages were or are serviced by defendant.

12.    Defendant, Mellon, is a banking corporation with its principal place of business set forth in the caption.  At all times relevant, Mellon has been authorized to transact business, and does transact business, in this Commonwealth.  Defendant, Mellon, is in the banking business, including, but not limited to, servicing of residential mortgage loans.  "Servicer" and "servicing" are defined in 12 U.S.C. § 2605(i)(2)(3).

13.    Defendant, DAVIS & REILLY, P.C. (hereinafter referred to as "Davis Reilly") is or was a law firm, a professional corporation, incorporated and authorized to transact business in the Commonwealth of Pennsylvania.  At all times relevant, Davis Reilly had transacted its business in this County and throughout the Commonwealth, and had subjected itself to the jurisdiction of this Court.  It is believed and therefore averred that defendant, Davis Reilly, is and has been a "debt collector" as that term is defined by 15 U.S.C. § 1692(a)(6) for creditor/defendant, Mellon, inter alia, and acts or has acted as an "outsourcing"[5] and collection attorney for defendant, Mellon.

14.    It is believed and therefore averred that defendant, DAVIS DAVIS ATTORNEYS, P.C. ("Davis Davis") is the successor to Davis Reilly.  Davis Davis is a Pennsylvania law firm with its offices located at the address set forth in the caption hereto.  As successor to Davis Reilly, Davis Davis is subject to all claims and defenses which plaintiffs and the members of the Class may have or have had against Davis Reilly.

---

[5] "Outsourcing" is the process by which a law firm (or attorney) represents a creditor in bankruptcy matters on a national basis, performing such services as filing proofs of claim, motions, complaints, and other activities, including referral or delegation of specific tasks to local counsel, as necessary.

15.     Individual defendant, REED J. DAVIS ("Reed Davis"), is an attorney licensed to practice law in the Commonwealth of Pennsylvania.  At all times relevant, Reed Davis was a member of Davis Reilly and is now a member and partner or shareholder of Davis Davis.  [Reference throughout this Class Action Complaint to the "Davis Group" is intended to include Davis Reilly, Davis Davis, Reed Davis, their respective predecessors in interest, successors in interest, agents, affiliates, representatives, employees, shareholders, partners and directors, as applicable, unless the context clearly indicates otherwise.]

16.     The reference to defendants, JOHN DOES 1 THROUGH 50 ("Does"), is intended to include certain individuals, partnerships, corporate entities and other persons who may be involved in the scheme defined below, but whose identity(ies) and location(s) is/are not yet known to plaintiffs.

17.     Plaintiffs bring this action on behalf of themselves and on behalf of a Class of persons whose mortgages were/are owned by, and/or were/are serviced or subserviced by defendant, Mellon.

18.     Persons comprising the Class, with the two sub-classes, are persons who are or were debtors[6] in bankruptcy[7] in which Mellon was/is a secured creditor which had, for the most part, accumulated pre-petition attorney's fees and costs which were not or are not the subject of allowed proofs of claim or other Code approval means, and/or accumulated post-petition, bankruptcy-related, attorney's fees and costs which were not or are not the subject of application to and approval by the Bankruptcy Court.

---

[6] "Debtors" is intended to mean debtors, joint debtors and co-debtors as these terms are defined by the Code.
[7] Bankruptcy is intended to include Chapters 7, 11, 12, and 13.

19.     As these attorney's fees and costs are without required Bankruptcy Court allowance and/or approval, they are unlawful, and they are not authorized by contract.

20.     After bankruptcy, Mellon, by itself and/or its duly authorized agents, attorneys and/or representatives, including the Davis Group and Does, wrongfully and illegally has attempted collection and/or collected these unlawful charges imposed upon plaintiffs and the members of the Class.

**JURISDICTION AND VENUE**

21.     This Class Action Complaint in Civil Action is properly within the jurisdiction of the County of Philadelphia, Pennsylvania:

a.     Defendant, Mellon, the Davis Group, and Does, are "creditors" and "debt collectors" as those terms are defined by the Unfair Trade Practices and Consumer Protection Laws of the Commonwealth of Pennsylvania and the "Fair Debt Collection Practices Act", which confer jurisdiction upon this Court.

b.     Furthermore, defendants conduct substantial and significant business in this County, and have maintained substantial contacts herein.

c.     The plaintiffs are located in this County, and the collateral security for the mortgage is situate in Philadelphia County.

d.     The United States Bankruptcy Court in which plaintiff, Thomas W. Doyle, had his bankruptcy proceedings is located in this County.

e.     All of the activities which gave rise to the pre-petition and post-petition attorney's fees and costs occurred in this County.

22.     Venue is proper within the County of Philadelphia, Pennsylvania.

## SUMMARY STATEMENT OF THE CASE

23.    This case arises from a scheme perpetuated by defendants against certain persons who have had secured indebtedness with Mellon.  Basically, defendants, including Mellon, pursue the illegal and wrongful fleecing of certain borrowers of Mellon, or mortgagors for whom Mellon performs or has/had performed mortgage servicing.

24.    These borrowers are persons who borrowed money from Mellon, or a predecessor in interest to Mellon, and from whom Mellon received a security interest in defined collateral[8], or persons whose mortgages are/were/had been serviced by Mellon.

25.    At various points in time, the borrowers became debtors in proceedings under and pursuant to the United States Bankruptcy Code.

26.    Prior to and during the debtors' bankruptcy proceedings, Mellon would accrue certain attorney's fees and costs, often sub silentio, to which it would later claim entitlement for reimbursement.

27.    During some bankruptcy proceedings, Mellon would not file proofs of claim which would include accrued attorney's fees and costs to which Mellon would later claim entitlement.

28.    During some bankruptcy proceedings, Mellon, by itself and/or by its authorized and empowered agent/attorney, the Davis Group, would file proofs of claim, or amended proofs of claim, in which were set forth pre-bankruptcy petition indebtedness claimed to be due and owing Mellon by the debtor(s), inter alia, but would exclude from

---

[8] Generally, the collateral is real property.

the proofs of claims certain accrued attorney's fees and costs to which Mellon would later claim entitlement.

29.     Furthermore, there may have been occasions during the debtors' bankruptcy proceedings when Mellon, by itself and/or by its authorized and empowered agent/attorney, the Davis Group, filed entries of appearance, proofs of claim, Motions for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362, adversary proceedings, or other motions, applications or proceedings involving the mortgagors/debtors.

30.     Needless to say, there would be no action by the Court, the debtors, or other persons in interest if and when the Mellon failed to make filings with the Court, including filings of proofs of claim, or filings which may have been filed but failed to set forth claims for pre-petition and/or bankruptcy-related attorney's fees and costs.  The Code requires that these filings are to be the means by which notice of the claims for attorney's fees and costs, inter alia, is manifested to persons in interest, and defendants specifically avoided providing notice.

31.     In any event, the debtors will have either been discharged or dismissed or withdrawn from their respective bankruptcy proceedings, with the following alternative results:

        a.      In those situations in which the debtors successfully completed – achieved discharge – of Chapter 11, 12 or 13 plans, Mellon will have been paid in full, through these plans, for the amount of any allowed proof of claim, and any and all post-petition sums or administrative claims applied for and awarded by the United States Bankruptcy Court.  As a result, creditors are thereafter bound by the provisions of 11 U.S.C. § 524, inter alia.

b.    In those situations in which the debtors have successfully completed – achieved discharge – of their Chapter 7 bankruptcies, the debtors will be discharged of any indebtedness not permitted by law or contract, and otherwise not allowed or approved by the Bankruptcy Court.[9],[10]  Creditors are thereafter bound by the provisions of 11 U.S.C. § 524, inter alia.

c.    In those situations in which the debtors have been dismissed or withdrawn from bankruptcy, they would be re-placed into their respective pre-bankruptcy status quo.  Be that as it may, these debtors' would nonetheless **not** be responsible for attorneys' fees and costs not specifically authorized by contract, and/or to which there has not been consent by the respective debtors and/or approved by the Court.  See Footnote 10.

32.    The attorney's fees and costs which are the basis of this complaint are those which are not authorized by contract and not permitted by applicable statute, law, rule or regulation, and they are cumulatively referred to below as the "illegal attorney's fees and costs", or the like.[11]  See also Footnote 10, above.

---

[9] Debtors' are not liable for obligations on evidences of indebtedness, such as promissory and demand notes, or the like.  Debtors are further not liable for any attorney's fees incurred during bankruptcy proceedings not consented to by the debtors and/or approved by the Court.

[10] Bankruptcy Court approval of pre-petition and post-petition attorney's fees and costs has a minimum standard of "reasonableness", the determination of which requires Bankruptcy Court concurrence.  The requirement of  "reasonableness" is the primary and standard state law criterion once it is determined that such fees and costs are contractually available.

[11] As will be set forth in "Causes of Action", these fees and costs must bear the test of "reasonable" and are therefore subject to approval by the Bankruptcy Court.  See In re Welzel, 275 F.3d 1308 (11th Cir. 2001).  Welzel, at 1315:  "Accordingly, we conclude that in the oversecured creditor context, § 506(b) applies a reasonableness standard across-the-board to all contractually set attorney's fees."  Welzel, at 1315:  "… 11 U.S.C. § 506(b) adds a new level of scrutiny to fee arrangements that goes beyond state law

33.     Once dismissed or discharged, however, Mellon and the Davis Group and Does initiated and perpetuated collection efforts to achieve from the members of the Class sums of money not provided for in the approved proofs of claim or approved amended proofs of claim, or by any Court Orders, or any agreement by the debtors, or which are not permitted by the mortgage documentation, or otherwise by state law.  In other words, Mellon, by itself, and with the aiding and abetting of the Davis Group, has attempted to and has collected, and continues to perpetuate these collection activities of the illegal attorneys' fees and costs[12].

34.     Furthermore, Mellon has failed and refuses to honor its obligations to the debtors by refusing to credit debtors' accounts with discharged debt unless debtors pay these illegal sums.

35.     Unless debtors pay these illegal sums, Mellon has failed and refused to satisfy mortgage liens of record when the mortgagors are otherwise entitled to satisfaction or release of lien.  Mellon and the Davis Group have otherwise used and abused their respective superior positions (in relation to the debtors/mortgagors) by incorporating and using tactics involving extortive behavior and/or other illegal and wrongful demands to collect these sums to which Mellon clearly has no entitlement.

---

requirements."  Welzel, at 1316: "… [W]e conclude, … , that Congress intended for contractually set attorney's fees in the oversecured creditor context to be governed by § 506(b), even if otherwise vested and enforceable under state laws … .  We therefore rule that the contractually set attorney's fees owed to [the creditor] must be assessed for reasonableness under § 506(b).

[12] Or, if not discharged, these sought sums constitute previously unspecified and unidentified attorney's fees and costs for which defendants failed to advise either the debtor and/or the Court, because the fees and costs are so unconscionable as to constitute gouging, at least.  Defendants, knowing that the Bankruptcy Court would never have approved such fees and/or costs, delayed in seeking payment until after discharge is the very essence of the perpetuated scheme.

36.    The Davis Group and Does have participated conspiratorially with Mellon in perpetuation of this scheme.

37.    These wrongful acts are manifested pursuant to corporate-wide policies on standardized computer-generated correspondence.

38.    These collection efforts are wrongful, illegal and in violation of the United States Bankruptcy Code, and the various Pennsylvania State consumer protection and debt collection statutes, inter alia, and are not authorized by the contract.

39.    The scheme involves the initiation and perpetuation of attempts to collect, and the collection of, illegal attorney's fees and costs from debtors. Mellon, and its conspirators intentionally avoid making known to the respective United States Bankruptcy Court any illegal attorney's fees and/or costs which Mellon may have assigned to the accounts of debtors/borrowers, for the reasons that Mellon and its conspirators have desired to avoid Bankruptcy Court oversight, and achieve payment of sums to which Mellon otherwise has no entitlement. The scheme begins with the internal accounting of Mellon, aided and abetted by the Davis Group, operating through the bankruptcy proceeding in silence, and climaxes when the debtors are no longer under Bankruptcy Court protection, either as a result of dismissal or discharge.

40.    Then, and only then, does Mellon, with the conspiratorial assistance of the Davis Group, seek collection of these sums apparently believing that they are free from Court oversight[13]; that collection of these sums will be without Court oversight and approval.

---

[13] A fallacy of the scheme

41.     To facilitate this scheme, defendants, under the control and guidance of certain individual officers of Mellon and others, not yet identified, do not seek Bankruptcy Court approval for these illegal attorney's fees and costs, and fail to reveal accrued attorney's fees and costs to **any** interested person until discharge, withdrawal or dismissal.

42.     Once orders of dismissal, withdrawal or discharge are issued, and to further facilitate the scheme, defendants effectively attempt to extort payment these illegal attorneys' fees and costs from the respective borrowers (former debtors in bankruptcy) by threatening a range of action from adverse credit reporting to mortgage foreclosure.

43.     This complaint seeks injunctive relief to compel defendants to discontinue these practices, and to compel truthful and timely reporting to the debtors and other persons in interest, and such actions as are reasonably necessary to achieve allowance of comprehensive proofs of claim, and to compel the application for approval of bankruptcy-related attorney's fees and costs.

44.     Furthermore, plaintiffs seek restitution of all such fees and costs wrongfully charged and collected, and/or a crediting to the accounts of those mortgagors whose mortgages have been wrongfully charged, plus interest, attorney's fees, and such other relief as this Court deems appropriate, and as sought by the various ad damnum clauses of the complaint, including punitive damages.

## CLASS ACTION ALLEGATIONS

45.     This case is properly maintainable as a Class action pursuant to and in accordance with Pennsylvania Rule of Civil Procedure ("Pa. R.C.P.") 1702:

(1)    On belief, the Class is so numerous that joinder of all members is impractical.  Although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least in the thousands.

(2)    There are substantial questions of law and fact common to the Class.

(3)    The claims of the representative plaintiffs are typical of the claims of the members of the Class.

(4)    The representative plaintiffs will fairly and adequately assert and protect the interests of the Class under the criteria set forth in Pa. R.C.P. 1709.

(5)    A class action under the circumstances discussed herein provides the most fair and efficient method for adjudication of the controversy under the criteria set forth in Pa. R.C.P. 1708.

46.    As monetary damages are sought, this case is properly maintainable as a class action pursuant to and in accordance with Pa. R.C.P. 1708(a).

(1)    The questions of law and the questions of fact predominate for the Class over any questions of law and/or fact affecting only individual members of the Class.

(2)    The size of the Class and the difficulties likely to be encountered in the management of the action favor a class action.

(3)    The prosecution of separate actions by or against individual members of the Class would create a risk of confronting the defendant with incompatible standards of conduct.

(4)    There is not known to be existing litigation by members of the Class involving the same issues.

(5)    This forum is an appropriate forum for the litigation of the entire national Class.

(6)    In view of the complexities of the issues and the expense of litigation, the separate claims of individual Class members are insufficient in amount to support separate actions.

(7)    It is not likely that the amount that may be recovered by individual Class members will be so small in relation to the expense and effort of administration as to not justify a class action.

47.    As equitable relief is sought, this case is properly maintainable as a class action pursuant to and in accordance with Pa. R.C.P. 1708(b)

(1)    See paragraph 46, above.

(2)    Plaintiffs contend that the defendant has refused to act as required by law on grounds generally applicable to the Class, to wit:  Defendants have failed to notice plaintiffs of these imposed charges; defendants have failed and/or refused to seek allowance of pre-petition attorney's fees and costs and to apply for and achieve Bankruptcy Court approval for bankruptcy-related attorney's fees and costs, as required by 11 U.S.C. § 506(b).  Accordingly, final equitable relief is sought with regard to the Class.

48.     A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class is overwhelmingly predominant.

49.    As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

50.    The claim by plaintiffs, for themselves and for and on behalf of the members of the Class, are justified as a Class action for the reason that the causes of action for each specific plaintiff are the same causes of action for all of the plaintiffs and the Class derived from two related issues:

(1)    Does the United States Bankruptcy Code require a secured creditor seeking from the debtor(s)-mortgagor(s) reimbursement of or payment for pre-petition attorney's fees and costs to file a proof of claim with the Bankruptcy Court for allowance of these sums?

(2)    Does the Code require that a secured creditor apply to the Bankruptcy Court for approval of bankruptcy-related attorney's fees and costs?

(3)    Are the subject attorney's fees and costs subject to Bankruptcy Court oversight and approval?

If the answer to these questions is yes, then:

(1)    Are the attempts to collect and/or the collection of these bankruptcy-related attorney's fees and costs without allowance and/or approval of the United States Bankruptcy Court constitute unfair or deceptive acts or practices?

(2)    Are the attempts to collect and/or the collection of the above-described attorney's fees and costs otherwise in violation of the laws of this State, and the federal Bankruptcy Code?

(3)    Are the attorney's fees and costs that are the subject of the collections and the attempts to collect permitted under applicable state law?

(4)    Are the attorney's fees and costs that are the subject of the collections and the attempts to collect permitted under applicable contract, to wit:  the generic mortgage documentation governing the mortgagor-mortgagee relationship?

**PLAINTIFFS' FACTUAL HISTORY**

51.    At all times relevant, plaintiffs are and have been the owners of their residence at 930 Caledonia Street, Philadelphia, PA 19128.

52.    On or about August 17, 1987, plaintiffs executed a mortgage in favor of defendant's, Mellon's, predecessor in interest, in which plaintiffs acknowledged an indebtedness to Mellon to be repaid over a period of ten (10) years, but not later than August 30, 1998, and that the residence of plaintiffs would be collateral for the amount borrowed by plaintiffs (principal sum borrowed:  $20,852.83).   See Exhibit "A", which is representative of a standardized, uniform, mortgage document.  The mortgage documentation provides inter alia, for the imposition of "**reasonable**" attorney's fees under certain circumstances[14].  See paragraphs 7 and 18 of the generic mortgage represented by Exhibit "A".

53.    On or about August 17, 1987, plaintiffs executed a promissory note in favor of Mellon's predecessor, agreeing to pay 120 payments in the amount of $284.50 each for a period of ten (10) years, or 120 months, beginning with the payment due

---

[14] These circumstances do **not** include attorney's fees incurred during or a result of bankruptcy.  See the uniform, standardized, language of paragraph 17 of Exhibit "A". See Footnote 27, below.

September 30, 1987.  This note also provided that, if payments were late, they would be subject to a late charge of $5.00.  See Exhibit "A".

54.    Plaintiff, Thomas W. Doyle, filed for bankruptcy under 11 U.S.C. Chapter 13 on July 1, 1993.  Plaintiff, Patricia Doyle, was a co-debtor as defined by 11 U.S.C. §1301, but not a joint debtor, as defined by 11 U.S.C. § 302.  Defendant, Mellon, was listed on the plaintiff's bankruptcy schedules as a secured creditor with a second mortgage on the residence of the plaintiffs as collateral.  See Exhibit "B" to this complaint.

55.    Plaintiff, Thomas W. Doyle's, Chapter 13 plan provided for payment to defendant, Mellon, as stated:  "Allowed proofs for pre-petition secured arrearages shall be paid under the plan, and secured payments due post-petition shall be made outside the plan:  … Mellon Bank … ."  See Exhibit "C".

56.    On September 8, 1993, defendant, Mellon, by the Davis Group, filed a proof of claim which stated, in Section 4 thereof:  "Amount of arrearage **and other charges included in the secured claim above, if any, $3,402.00** (emphasis supplied.**)."** See Exhibit "D".

57.    At no time thereafter prior to and during Thomas Doyle's bankruptcy proceeding did Mellon notice or notify plaintiffs of its expenditure of any sums for attorney's fees and costs, or that it was expending/disbursing any such sums.

58.    Mellon, by the Davis Group, did file its proof of claim.  At no time thereafter did Mellon, by itself or the Davis Group, amend its proof of claim, which was allowed at confirmation.

59.     Therefore, defendants, Mellon and the Davis Group, and plaintiff, Thomas W. Doyle, the Trustee and the Court and other interested persons agreed that the pre-petition arrearage due from plaintiff, Thomas W. Doyle, to defendant, Mellon, was totally and solely $3,402.00, and plaintiff's Chapter 13 plan provided for full payment thereof, with no objection by or on behalf of defendant, Mellon.

60.     Plaintiff's Chapter 13 plan was confirmed by the Court without objection. See the docket entries of plaintiff's Chapter 13 case, attached as Exhibit "E".   The plan provided, inter alia, that, over the life of the plaintiff's Chapter 13 plan, the debtor would [and did] pay sufficient funds to fully fund the Chapter 13 plan, including, but not limited to, the amount claimed by and allowed to Mellon.

61.     The Chapter 13 Standing Trustee distributed to defendant, Mellon, the sum of $3,402.00, the exact amount of Mellon's approved proof of claim.  See Exhibit "F".

62.     Plaintiff, Thomas W. Doyle's, Chapter 13 bankruptcy was successfully concluded on September 14, 1998, with plaintiff, Thomas W. Doyle, having complied with all Court orders and the requirements of his Chapter 13 plan.  See Exhibit "G".

63.     By Order dated October 13, 1998, Plaintiff, Thomas W. Doyle, was granted his discharge from bankruptcy.  See Exhibit "H".

64.     During the course of plaintiff's bankruptcy proceeding, defendant, Mellon, by its attorney, filed two separate Motions for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362.  Each of these motions resulted in a stipulation manifesting an amicable resolution of the issue(s).  The Court approved the stipulations.

65.     Neither plaintiff's Chapter 13 nor the stipulations approved by the Court provided for any attorney's fees to be paid to Mellon, the Davis Group or any other representative of Mellon.  Thus, all of the pre-petition and post-petition, pre-discharge, sums of money agreed to be paid by the debtor to Mellon, and/or approved and/or ordered by the Court, were paid.

66.     After plaintiff received his discharge from bankruptcy,  Mellon, by itself, and by the Davis Group, demanded payment by plaintiff for attorney's fees and costs allegedly incurred prior to and during the operation of the plaintiff's bankruptcy proceeding, as follows:

|       |                              |     |          |
|-------|------------------------------|-----|----------|
| (i)   | Pre-petition attorney's fees | =   | $5,327.00 |
| (ii)  | Pre-petition costs           | =   | $  277.28 |
| (iii) | Post-petition, pre-discharge Fee | = | $3,136.00 |
| (iv)  | Post-petition, pre-discharge Costs | = | $  117.96 |
|       | TOTAL:                       | =   | $8,858.24[15] |

See Note from Mellon Bank, dated April 15, 1999; see also letter from the Davis Group dated August 26, 1999, attached hereto as Exhibits "I" and "J".

67.     All of the fees sought and set forth in paragraph 66, above, were ostensibly incurred without notice prior to the bankruptcy and/or during the operation of the bankruptcy, as indicated; none of the fees sought were the subject of notice to plaintiffs, or an attempt to achieve allowance and/or Court approval for these charges,

---

[15] The actual amount demanded by Mellon in its payoff included an additional sum of $5,800 (+/-) for that which Mellon has claimed represents past due payments, a sum vigorously disputed by plaintiffs.

and, therefore, are discharged, or otherwise barred by operation of law, including the

Bankruptcy Code[16], applicable state law, and contract.

68.    After discharge, plaintiffs were charged these illegal attorney's fees and

costs ostensibly incurred prior to the filing for bankruptcy.

69.    After discharge, plaintiffs were charged these illegal attorney's fees and

costs ostensibly incurred during the respective bankruptcy.

70.    As a function of the scheme to wrongfully collect the unapproved, pre-

petition and post-petition, pre-dismissal or pre-discharge illegal attorneys' fees and costs,

Mellon, in conspiracy with the other defendants, acted to wrongfully use the inherently

superior-perceived position of a mortgagee and lawyers to coerce plaintiffs to pay these

sums to which Mellon has no entitlement.  Defendants' acts, include, but are not limited

to:

        a.    Dunning by oral and written communication;

        b.    Providing adverse credit information to other creditors, potential

creditors and credit reporting agencies;

        c.    Failing and refusing to mark mortgages satisfied or release the

mortgage liens regardless of payment in full, but for the sums to which Mellon is not

entitled;

        d.     Accelerating the outstanding balance because of a default claimed

as a result of nonpayment of the illegal attorneys' fees and costs;

---

[16] It is believed and therefore asserted that the attorney's fees claimed represent such an excessive, exorbitant, unconscionable amount that Mellon and the conspirators knew or should have known would not have been approved by the Court, regardless.

e.    Threatening to or instituting mortgage foreclosure proceedings claiming that the nonpayment of these illegal attorneys' fees and costs constitutes a default;

f.    Upon the wrongful acceleration and/or initiation of foreclosure, refusing to accept monthly payments which, in turn, causes late charges and other fees and costs to accrue, exacerbating damages already caused by defendants' wrongful acts.

g.    Failing to credit plaintiffs with payments made, and/or mis-applying payments made from the respective bankruptcy plan[17];

h.    Failing to credit plaintiffs with payments made, and/or mis-applying payments made after the respective bankruptcy plan.

71.    In fact, on June 22, 2000, plaintiffs were compelled to refinance their residence, paying in full – under protest - the claim of Mellon (the title agency payoff was sent to Mellon's attorney by overnight delivery, received on June 23, 2000). Mellon's attorney forwarded the payment to Mellon, which credited Mr. Doyle's account on June 28, 2000.

72.    At the same time, Mellon, by its attorney, was notified in writing that the payoff, which included the pre-petition and post-petition attorney's fees and costs of $8,858.24, was disputed and did not constitute a waiver of any rights of plaintiffs in this litigation.

73.    The refinancing was an attempt to mitigate damages proximately resulting from the illegal charges imposed by defendants and the acts of defendants that are the basis of this action.

---

[17] Payments may have been made pursuant to plans for Chapters 11, 12 or 13, and distributions made, even though a case may have been eventually dismissed.

## COMMON PLAINTIFFS' AND CLASS ELEMENTS

74.    All members of the Class executed standardized mortgage documentation in favor of Mellon, or its predecessors in interest, valid and binding upon the successors in interest and servicers of the respective mortgages.

75.    The standardized mortgage documentation provides specifically for the charge of  "reasonable" attorney's fees under certain defined circumstances.

76.    The standardized mortgage documentation further provides specifically that the Lender's disbursement of sums for such items as "reasonable attorneys' fees" shall only occur "upon notice to Borrower" and only in the event that any action having been filed shall "materially affect Lender's interest to the Property".  Thus, the contractual authority for the creditor to charge the debtor for reasonable attorney's fees under the standardized circumstances is specifically limited by the generic language of paragraphs 7 and 18 of the form mortgage represented by Exhibit "A".

77.    All members of the Class executed standardized obligations of indebtedness (notes, or the like) in favor of the mortgagee, and its successors in interest.

78.    All members of the Class have been involved in bankruptcy proceedings as debtors, joint debtors, and/or as co-debtors under the protection of Title 11, in Chapters 7, 11, 12, and/or 13, in which Mellon, or its predecessors in interest, was a secured creditor.

79.    All members of the Class have participated in bankruptcy proceedings that resulted in a dismissal, withdrawal or discharge of the respective bankruptcies[18],[19].

---

[18] Some members of the Class will have been or are persons currently in a bankruptcy; however, these members' class status derives from a prior bankruptcy proceeding or prior

80.     Preceding bankruptcy proceeding, Mellon, by itself and or through or with the Davis Group, may have participated in pre-petition activity resulting in the accrual of attorney's fees and costs which were charged to the mortgagor(s).  In many of these circumstances, attorney's fees and costs were accumulated, <u>sub</u> <u>silentio</u>, and with no notice to the borrower(s).  In most cases, the pre-petition attorney's fees and costs were so far in excess of reasonable as to be excessive and unconscionable, and, in no case, were these fees and costs disbursed "upon notice" to plaintiffs and the other members of the Class.

81.     During and throughout subsequent bankruptcy proceedings, defendants did not include such accumulated attorney's fees and costs in a proof of claim, or other notices to persons of interest in the bankruptcy proceeding, including the debtors, debtors' counsel, the trustee, the Court, other creditors, and other persons.

82.     In every Class member's bankruptcy proceeding, Mellon, by itself or by its designated attorneys or other representatives, including the Davis Group, may have participated in no docketed activity in the bankruptcy proceedings; nonetheless, in every case involving a member of the Class, Mellon accumulated bankruptcy-related attorney's fees and costs, <u>sub</u> <u>silentio</u>, that defendants later collected or attempted to collect from the Class member.

---

to conversion from the bankruptcy proceeding during which the bankruptcy-related fees at issue were ostensibly accrued.

[19] Some members of the Class will have been or are persons who have participated in more than one bankruptcy proceeding as a debtor, joint debtor, and/or co-debtor.

83.    In every Class member's bankruptcy proceeding, Mellon, by itself and/or by the Davis Group, may have participated in certain docketed activity[20] in the bankruptcy proceedings; nonetheless in every case involving a member of the Class, Mellon accumulated bankruptcy-related attorneys' fees and costs to be imposed against the Class member.

84.    In every case involving a Class member, defendants awaited the Class member's exit from bankruptcy by dismissal, withdrawal and/or discharge before breaking its silence and attempting to collect and/or collecting these bankruptcy-related attorney's fees and costs from the Class members.

85.    After bankruptcy, the members of the Class have been charged for

a.    Pre-petition attorney's fees and costs which were not the subject of an allowed proof of claim or other notice to persons in interest, including the debtor(s), and, therefore, were not subject to the oversight of the Bankruptcy Court for "reasonableness"; and/or

b.    Bankruptcy-related attorney's fees and costs without application to the Bankruptcy Court for its approval.

86.    By accumulating pre-petition attorney's fees and costs, sub silentio, defendants have intentionally attempted to subvert and circumvent Mellon's contractual responsibilities, but also the oversight to which the Bankruptcy Court is entitled regarding the imposition of attorney's fees and costs for secured creditors.  See 11 U.S.C. § 506(b) and Bankruptcy Rule 2016(a).  See Footnote 20.

---

[20] These docketed activities range from filing entries of appearance, motions, proofs of claim, objections to confirmation, adversary proceedings and other activities.

87.    By accumulating bankruptcy-related attorney's fees and costs, sub silentio, Mellon has intentionally attempted to prevent and avoid notice to the debtors, the Trustees, the Court, other secured creditors, other creditors, and other persons in interest, and the opportunity of these persons to object to the imposition of these fees and costs.[21]

88.    This Class Action Complaint in Civil Action does **NOT** espouse the argument that the secured creditor is not entitled to **reasonable** attorney's fees; rather, in the context of bankruptcy and the underlying agreement with its mortgagors, Mellon's entitlement must be subject to notice, allowance of appropriate claims, and/or an application to and approval by the Bankruptcy Court.

89.    Although the mortgage documentation provides for the imposition of attorney's fees and costs under defined circumstances and situations, these fees and costs must be reasonable and noticed, and, in the case of bankruptcy, must be the subject of an application to and allowance and/or approval by the Bankruptcy Court.

90.    11 U.S.C. § 524 precludes the attempt to collect and the collection of pre-petition attorney's fees and costs when they were not set forth in an allowed proof of claim.

91.    11 U.S.C. § 506(b), vis-à-vis Bankruptcy Rule 2016(a), requires that bankruptcy-related attorney's fees and costs be the subject of an application to and approval by the Bankruptcy Court before these charges can be the subject of attempts to collect, or collection.

---

[21] Without oversight or timely notice, the only notice of the imposition and existence of these fees and costs occurs at foreclosure or when the residence is sold, or the mortgage refinanced, when the time and ability to contest these fees and costs are untimely, and always at the latest stages when the mortgagor(s) are at the mercy of the mortgage servicer to take a payoff, or lose one's residence, one's buyer, one's refinance, or the like.

92.    In order for the secured creditor to be awarded bankruptcy-related fees and costs, 11 U.S.C. § 506(b) requires that:

a.    The creditor be oversecured; that is, the collateral must have equity over and above the outstanding secured debt;

b.    The underlying contract (the mortgage) provides for attorney's fees under the circumstances; and

c.    The fees and costs charged are **reasonable**.

93.    Thus, in any case involving a secured creditor in a bankruptcy context, there must be Bankruptcy Court oversight and approval before which the secured creditor is entitled to reimbursement for pre-petition attorney's fees and costs.

94.    Furthermore, in any case involving a secured creditor in a bankruptcy context, there must be Bankruptcy Court oversight and approval before which the secured creditor is entitled to reimbursement for post-petition, pre-discharge, bankruptcy-related attorney's fees and costs.

95.    The primary, basic, and constant issues in this case are only that:

a.    Pre-petition attorney's fees and costs must be the subject of an allowed proof of claim, and

b.    Bankruptcy-related attorney's fees and costs must be the subject of application to and approval by the Bankruptcy Court.

96.    Without allowance, or approval, the post-bankruptcy attempt to collect these attorney's fees and costs is not authorized by law, and constitutes unlawful conduct.

97.    The attempt to collect and/or the collection of these illegal fees violates the provisions of 73 P.S. § 2270.4(b) including, but not limited to sub-section (6):

"A creditor may not use unfair or unconscionable means to collect or

attempt to collect any debt.  Without limiting the general application of the

foregoing, the following conduct is a violation of this paragraph:

(i)  The collection of any amount, including interest, fee, charge or

expense incidental to the principal obligation, **unless such amount is**

**expressly authorized by the agreement creating the debt or permitted**

**by law."[22]**  (Emphasis Supplied.)

98.    In support of the intentional malfeasance by defendants, there is no

question that these charges representing illegal attorney's fees are often "in disguise" vis-

à-vis deceptive debit entries into the debtors' accounts by defendants, or by silence,

intended to misinform/mislead/defraud the members of the Class not only regarding the

wrongful charges but the true basis and nature of the debit.

99.    Members of the Class have not been provided with any notice, reports,

explanations, notations, or other advice regarding the existence, derivation, definition or

imposition of such a charge, at least until after the termination of the respective members

bankruptcy proceedings[23], or until a future time, such as when a member of the Class

may wish to payoff or refinance the outstanding balance.[24]

100.    These issues of fact, therefore, for all members of the Class are the same

as set forth above, with minor, not substantial, variation.

---

[22] Needless to say, **un**reasonable amounts charged to consumers are never authorized by
law or contract.  The omnipresent question, then, is:  What are the consumers' remedies?
[23] By withdrawal, dismissal or discharge.
[24] Certainly, with the super-sophisticated computerization utilized by Mellon correlated
with the extensive and sophisticated reporting requirements imposed by Regulation X,
Mellon certainly has always had the capability of reporting a category "Attorney's Fees"
or the like, and it is averred that the only reason there is no such utilized accounting
category is to hide the purpose of the attorney's fee charge.

101.    The questions of law governing the rights of each member of the Class are the same as they relate to plaintiffs, and involve the all-pervasive issue as to the legality of the attempt to collect or the collection of the attorney's fees described above without compliance with contract, and federal and state law.

## COUNT I – BREACH OF CONTRACT
## PLAINTIFFS V. MELLON BANK, N.A.

102.    The averments of paragraphs one through and including one hundred and one above are incorporated herein by reference.

103.    The mortgage documentation was drafted by Mellon Bank, N.A., or its predecessor in interest.

104.    As such, the transaction with regard to the execution of the mortgage documentation was certainly not an arm's length transaction in that plaintiffs had no opportunity or elective capability to review and negotiate the terms and conditions of the loan and mortgage.

105.    The mortgage documentation, specifically Exhibit "A", provides as follows, inter alia:

a.    Paragraph 7:  "If borrower fails to perform the covenants and agreements contained in the Mortgage, or if any action or proceeding is commenced which **materially affects Lender's interest in the Property**, then Lender, at Lender's option, **upon notice to borrower**, may make such appearances, disburse such sums, including **reasonable attorney's fees**, and take such action as is necessary to protect Lender's interest.  [Emphasis has certainly been supplied.]  See Footnote 24, above.

b.    Paragraph 17, relating solely to foreclosure proceedings, provides: "Lender shall be entitled to collect in such proceeding all expenses of foreclosure,

including, but not limited to, **reasonable attorneys' fees and costs** … ."  [Emphasis supplied.]

106.    Under no circumstances has Mellon complied with the contract as the attorney's fees and costs charged are not reasonable.

107.    Under no circumstances has Mellon complied with the contract as the attorney's fees and costs have been charged without notice to the plaintiffs.

108.    Mellon has violated its contractual duties owed to plaintiffs by failing to give notice as required.

109.    Mellon has violated its contractual duties owed to plaintiffs by charging fees and costs that were not, under any circumstances, reasonable.

110.    In any event, Mellon is in breach of these contractual obligations owed to plaintiffs.

WHERFORE, plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Preliminarily and thereafter permanently enjoining Mellon from engaging in the acts described herein;

C.    Requiring that Mellon pay compensatory damages, statutory damages; disgorgement by Mellon of any sums collected, attorney's fees and experts' fees; and

D.    Granting such other relief as the Court may deem appropriate.

## COUNT II – BREACH OF THE OBLIGATIONS OF GOOD FAITH AND FAIR DEALING
### PLAINTIFFS V. MELLON BANK, N.A.

111.    The averments of paragraphs one through and including one hundred and ten, above, are incorporated herein by reference.

112.    This contract, drafted by Mellon or its predecessor in interest, imposes upon defendant, Mellon, a duty that Mellon is to act with good faith and fair dealing in respect to the plaintiffs "in its performance and its enforcement"[25] of the contract.

113.    Mellon has failed to act with the required good faith and fair dealing.

114.    Mellon has conducted its performance and enforcement of the contract without honesty.

115.    Mellon has conducted its performance and enforcement of the contract with dishonesty.

116.    Mellon has conducted its performance and enforcement of the contract in bad faith.

117.    Mellon is in violation of its duty owed to the plaintiffs of good faith and fair dealing.

WHERFORE, plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Preliminarily and thereafter permanently enjoining Mellon from engaging in the acts described herein;

---

[25]  See Donahue v. Federal Express Corporation, 753 A.2d 238, 242 (Pa. Super 2000).

C.    Requiring that Mellon pay compensatory damages, statutory damages; disgorgement by Mellon of any sums collected, attorney's fees and experts' fees; and

D.    Granting such other relief as the Court may deem appropriate.

### COUNT III – VIOLATION OF 41 P.S. § 401, ET SEQ.
### PLAINTIFFS V. DEFENDANTS

118.    The averments of paragraphs one through and including one hundred and seventeen above are incorporated herein by reference.

119.    Plaintiffs are consumers.

120.    Plaintiffs are or have been residential mortgage debtors and the mortgages that are the subject of this action are or have been residential mortgages.

121.    Pursuant to Thomas W. Doyle's Chapter 13 proceeding, and his compliance therewith resulting in his bankruptcy discharge, all mortgage arrears were "cured" as of the date of discharge.

122.    41 P.S. § 401, et seq. provides, inter alia, that the debtor has the right to "cure" mortgage arrears.

123.    Furthermore, the plaintiffs have the right to receive a "Notice of Intention to Foreclose Mortgage" after a default, pursuant to 41 P.S. § 403.

124.    At and after the bankruptcy discharge of the plaintiffs, there was no default, plaintiffs were current with their mortgage, and Mellon and Mellon's agents failed to send to plaintiffs a notice of default, acceleration or any other notice evidencing that Mellon may have taken steps to be entitled to attorney's fees and costs other than

those provided in the Chapter 13 plan or subsequently.[26]

125.    41 P.S. § 406 provides that a mortgagee in a foreclosure action may charge only reasonable and actual fees in and for a foreclosure action, or other legal action.

126.    41 P.S. § 406 states:

"With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorneys' fees from a residential mortgage debtor except as follows:        …

(2)    Upon commencement of foreclosure or other legal action[27] with respect to a residential mortgage, attorneys' fees which are **reasonable** [emphasis supplied] and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

(3)    Prior to commencement of foreclosure or other legal action [see Footnote 24] attorneys' fees which are **reasonable** [emphasis supplied] and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act."

127.    The attorney's fees charged plaintiffs by Mellon and sought to be collected by the Davis Group are unreasonable and in violation of this act.

128.    Mellon, with the aid, assistance and conspiracy of the other defendants nonetheless charged plaintiffs fees for pre-petition bankruptcy foreclosure fees and costs

---

[26] Any pre-bankruptcy discharge compliance by defendants with 41 P.S. § 401, et seq. was obviated and of no force and effect after the pre-petition and any post-petition arrears were "cured", and the mortgage reinstated.
[27] See In re DeTone, 262 B.R. 359 (W.D. Pa. 2001)

which were **not**:

    a.    Reasonable;

    b.    Not provided for in the allowed proof of claim filed preceding confirmation of plaintiffs' Chapter 13 plan;

    c.    Not the subject of any notice to plaintiffs, the Bankruptcy Court, creditors, the Trustee, or any other parties in interest both preceding and during the bankruptcy proceeding; and

    d.    Were and are not permitted by contract or law, and, therefore, unlawful.

129.    Mellon, with the aid, assistance and conspiracy of the other defendants nonetheless charged plaintiffs fees for post-petition bankruptcy-related attorney's fees and costs which were **not**:

    a.  Reasonable;

    b.  Not pursuant to the protection of the property interest of the defendant, Mellon, and not otherwise permitted by contract;

    c.  Not the subject of any notice to plaintiffs, the Bankruptcy Court, creditors, the Trustee, or any other parties in interest preceding, and during, the bankruptcy proceeding; and

    d.  Were and are not permitted by contract or law, and, therefore, unlawful.

130.    Accordingly, defendants are in violation of  41 P.S. § 406, inter alia.

131.    Plaintiffs have a private right of action for violation of this Act 6 of Jan. 30, 1974, P.L. 13.

132.    41 P.S. § 503(a) provides:  "If a borrower or debtor, including but not limited to a residential mortgage debtor, prevails in an action arising under this act, he shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee.

WHEREFORE, plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Preliminarily and thereafter permanently enjoining defendants from engaging in the acts described herein;

C.    Requiring that defendants pay compensatory damages, statutory damages; disgorgement by them of any sums collected, attorney's fees and experts' fees; and

D.    Granting such other relief as the Court may deem appropriate.

### COUNT IV – UNFAIR TRADE PRACTICES
### PLAINTIFFS V. DEFENDANTS

133    The averments of paragraphs one through one hundred and thirty two above are incorporated herein by reference.

134.    Plaintiffs are consumers.

135.    Plaintiffs are or have been residential mortgage debtors and the mortgages that are the subject of this action are residential mortgages.

136.    Defendants have each and all made their services available throughout this Commonwealth to the citizens and residents hereof.

137.    Defendants have engaged in unfair trade practices, unfair methods of competition, and have practiced and continue to engage in unfair and deceptive acts and practices, directly and indirectly adversely affecting plaintiffs and the members of the Class.

138.    These deceptive acts and practices have been manifested in and by silence and otherwise, and are violative of the Pennsylvania Unfair Trade Practices Act and Consumer protection statutes, including, but not limited to:  73 P.S. § 201-1, et seq., and 73 P.S. § 2270.4, et seq.

139.    These acts and practices by defendants include, but are not limited to: Violations of the Homeowners' Emergency Mortgage Assistance Act of 1983, 41 P.S. § 401, et seq., 73 P.S. § 2270.4(a), 11 U.S.C. §§ 105, 362, 506 and 524.

140.    In addition, Mellon has violated the provisions of 73 P.S. § 2270.4(b), which states:  "With respect to debt collection activities of creditors in this Commonwealth, it shall constitute an unfair or deceptive debt collection act or practice under this act if a creditor violates any of the following provisions: …

(5)    A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. … [Such as]:

(ii)    The false representation of the character, amount or legal status of any debt. …

(x)    The use of any false representation or deceptive means to collect or attempt to collect any debt … .

(6)    A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt.  … [Such as]

36

(i)    The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt of permitted by law."

141.    Defendants are in violation of 73 P.S. § 201-1, et seq., including but not limited to the following acts or practices:   Engaging in any … fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  See 73 P.S. § 201-2(xxi).

142.    In addition, the Davis Group, Davis Reilly, Davis Davis, and Reed Davis, are all debt collectors as that term is defined by Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6), which is incorporated by reference in 73 P.S. § 2270.4; therefore, the Davis Group has been in violation of 73 P.S. § 2270.4.[28]

143.    Each member of the Davis Group has violated 15 U.S.C. § 1692e, thus violating 73 P.S. § 2270.4, which states:

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt", and

"(2)  The false representation of –

(A)  the character, amount, or legal status of any debt; … .

"(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt … .

"(11)  The failure to disclose in the initial written communication with the consumer and … that the debt collector is attempting to collect a debt and that any

---

[28] Reference herein to 15 U.S.C. § 1692a, et seq. is intended to reference a violation of 73 P.S. § 2270.4, et seq., and is not intended set forth an independent cause of action in this case.

information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, … .''

144.    In fact, no communication from any member or representative of the Davis Group noticed plaintiffs that they were debt collectors, attempting to collect a debt, that information obtained will be used to assist in collecting the debt.

145.    The failure of these debt collectors to reveal these attorney's fees and costs on the proof of claim filed with the Bankruptcy Court and other documents, correlated with the silence thereafter and until plaintiffs wanted to pay off their mortgage constitutes a false representation, by silence, and a violation of §1692e, constituting a violation, in turn, of the Pennsylvania Consumer Protection statutes.[29]

146.    The representation that these illegal fees and costs were necessary and legal and reasonable constitute further misrepresentations as to the character and legal status of the alleged debts.

147.    15 U.S.C. § 1692f provides:  "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt", including:

"(1)  The collection of any amount (including any interest, fee, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

148.    Certainly, these enormous, unconscionable and illegal fees are not expressly authorized by agreement or permitted by law, including, but not limited to:

a.    The injunction of 11 U.S.C. § 524 which bars attempts at collection or collection of pre-petition amounts which have been discharged, such as pre-

---

[29] Also, see 18 U.S.C. § 152.

petition attorney's fees and costs which, in this case, were purposely excluded from notice vis-à-vis a filed proof of claim or other notice, when, in fact, the creditor and debt collectors had notice of the bankruptcy proceedings.

        b.     Contractually, only "reasonable" fees are permitted.

        c.     11 U.S.C. § 506(b) disallows post-petition attorney's fees and costs which have not been the subject of an application for and approval by the Bankruptcy Court.

      149.    Therefore, Reed Davis, Davis Davis and Davis Reilly are in violation of 73 P.S. § 2270.4, et seq.

      150.    The [intentional] failure to put alleged pre-petition bankruptcy fees in the proof of claim, and the [sub silentio] accumulation of these ostensible attorney's fees and costs during bankruptcy represent violations of 11 U.S.C. § 362, which, in turn, represent violations of the Unfair Trade Practices Acts of the Commonwealth of Pennsylvania.

      151.    The attempt to collection and the collection of pre-petition and post-petition, pre-discharge attorney's fees and costs constitute violations of 11 U.S.C. § 524, which, in turn constitute violations of Unfair Trade Practices Acts of the Commonwealth of Pennsylvania.

      WHERFORE, plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

        A.     Certifying the Class described, and appointing plaintiffs as representative of the Class, and the undersigned as Class counsel;

        B.     Preliminarily and thereafter permanently enjoining defendants from engaging in the acts described herein;

C.      Requiring that defendants pay compensatory damages, statutory damages; disgorgement by them of any sums collected, attorney's fees and experts' fees; and

D.      Granting such other relief as the Court may deem appropriate.

### COUNT V - MISREPRESENTATION
### PLAINTIFFS V. DEFENDANTS

152.    The averments of paragraphs one through and including one hundred and fifty-one above are incorporated herein by reference.

153.    Defendants, by their acts and silence, and by their writings and other publications to plaintiffs, have misrepresented the very existence of these attorney's fees and costs by accruing and imposing them, sub silentio, and effectively hiding their existence until perceptively outside of the scope of Bankruptcy Court oversight, in conspiracy one with the other.

154.    This silence constitutes misrepresentation of material facts.

155.    This silence has been intentionally maintained to induce plaintiffs not to timely act during the latters' bankruptcy proceedings to seek Bankruptcy Court review and disallowance

156.    Defendants, by their silence and by their affirmative representations intended that the plaintiffs and the members of the Class would be induced not to react to the imposition of the attorney's fees and costs not included in the proofs of claim or other notices to plaintiffs and members of the Class; instead, correlated with the sense of superiority with which mortgage servicers are imbued and perceived, plaintiffs and the members of the Class would be induced to accept that they had no liability for such charges

40

until payoff, refinance or sale of the property at which time they would be compelled to pay the illegal charges, without question.[30]

157.    Furthermore, by their silence, defendants intended that plaintiffs and the members of the Class act by paying these sums only after the oversight of the Court has been eliminated by the misrepresentative silence of Mellon manifested by defendants' failure to notice, advise and seek approval.

158.    The members of the Class have justifiably relied on these misrepresentations, and have been actually induced to react as planned by defendants. Plaintiffs' and the Class members' reliance has been further justified by their perception of the superior position of the defendants, Mellon and the latter's counsel.  See Footnote 29.

159.    Plaintiffs and the members of the Class have been and continue to be damaged as a proximate result thereof.

160.    Plaintiffs and the members of the Class are entitled to recover compensatory damages, reasonable attorney's fees, punitive damages, costs and other damages that this Honorable Court may deem appropriate.

WHERFORE, plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Preliminarily and thereafter permanently enjoining Mellon from engaging in the acts described herein;

---

[30] Plaintiffs and members of the Class are also made to universally believe that these charges must be paid and that there is no recourse from these imposed illegal fees and costs.

        C.      Requiring that Mellon pay compensatory damages, statutory damages; disgorgement by Mellon of any sums collected, attorney's fees and experts' fees; and

        D.      Granting such other relief as the Court may deem appropriate.

**COUNT VI - FRAUDULENT MISREPRESENTATION**
**PLAINTIFFS V. DEFENDANTS**

        161.    The averments of paragraphs one through and including one hundred and sixty above are incorporated herein by reference.

        162.    The misrepresentations, set forth above, were fraudulent[31], intentional, wanton, reckless and/or grossly negligent.

        163.    In addition to other damages, plaintiff and the members of the Class are entitled to punitive damages.

        WHERFORE, plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

        A.      Certifying the Class described, and appointing plaintiffs as representative of the Class, and the undersigned as Class counsel;

        B.      Preliminarily and thereafter permanently enjoining the Mellon from engaging in the acts described herein;

        C.      Requiring that Mellon pay compensatory damages, statutory damages; disgorgement by Mellon of any sums collected, attorney's fees and experts' fees; and

        D.      Granting such other relief as the Court may deem appropriate.

---

[31] See Footnote 29.

## COUNT VII - PRAYER FOR INJUNCTIVE RELIEF
## PLAINTIFFS V. DEFENDANTS

164.    The averments of paragraphs one through and including one hundred sixty-three above are incorporated herein by reference.

165.    Mellon, by itself and with the aid and assistance of the Davis Group, continues to charge and attempt to collect and/or collects these illegal attorneys' fees from plaintiffs and members of the Class.

166.    These attorneys' fees and costs are not only statutorily prohibited, and contractually prohibited, but are excessive, unconscionable, oppressive, and otherwise improper and illegal.

167.    The acts of not making any filings or revealing these fees and costs until discharge is, in itself, inequitable and unconscionable.

168.    The failure to not apply for and seek Bankruptcy Court approval of the imposition upon debtors of postpetition attorneys' fees provides for no adequate remedy at law for the continuing activity described herein.

169.    Time is of the essence in that these practices continue unabated, and adversely affecting members of the Class.

170.    Injunctive relief is appropriate and necessary to compel defendants to cease and desist from charging members of the without application to the Bankruptcy Court therefore and approval thereof.

WHEREFORE, plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Preliminarily and thereafter permanently enjoining the defendants from engaging in the acts described herein;

C.    Requiring that Defendants pay compensatory damages, statutory damages; disgorgement by defendants of any sums collected, attorney's fees and experts' fees; and

D.    Granting such other relief as the Court may deem appropriate.

**<u>JURY TRIAL IS DEMANDED</u>**

Respectfully submitted:

/s/ Stuart A. Eisenberg
_____
Stuart A. Eisenberg
Attorney I.D. 12433
Carol B. McCullough
Attorney I.D. 56424
MCCULLOUGH & EISENBERG, P.C.
Suite 201
530 West Street Road
Warminster, PA 18974
1-215-957-6411